UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE, et al., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 23-10923-FDS |
| ) | |
| ATRIUS HEALTH, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO REMAND**

SAYLOR, C.J.

This is a putative class action against a non-governmental healthcare provider alleging systematic violation of patients' state-law privacy rights. The complaint was originally filed in the Suffolk County Superior Court before being removed to federal court under 28 U.S.C. § 1442(a)(1). Plaintiffs have moved to remand, contending that federal subject-matter jurisdiction is lacking because defendant has failed to meet the requirements of § 1442(a)(1). For the reasons set forth below, the motion to remand will be granted.

I. **Background**

A. **Factual Background**

Atrius Health, Inc. is the parent company for dozens of medical practices in Massachusetts. (Compl. ¶ 13). Its principal place of business is in Massachusetts, and it is a Massachusetts corporation. (*Id.* ¶ 11). Atrius operates websites designed for patient communications, scheduling, searching for physicians, paying bills, requesting medical records, learning about medical issues, and joining support groups. (*Id.* ¶¶ 14-15).

The complaint alleges that plaintiff is a patient of Atrius and regularly visits its websites and enters data, including personal health information. (*Id.* ¶ 10). The complaint alleges that Atrius's websites utilized Google Analytics and Facebook's Meta Pixel tools—computer codes that track users' activities on a website, allowing that information to be processed and analyzed by Google or Facebook, and shared with third-party advertisers. (*Id.* ¶¶ 26-40).

In its notice of removal, Atrius asserts that it acted in accordance with a series of federal programs that sought to create a nationwide health-information technology infrastructure. (Notice ¶ 11).

### 1. Federal Regulatory Framework

In 2004, President Bush ordered the Secretary of Health and Human Services to establish the position of National Health Information Technology Coordinator. Exec. Order No. 13,335, 69 Fed. Reg. 24,059 (Apr. 27, 2004). The Executive Order specified that the Coordinator "shall, to the extent permitted by law, develop, maintain, and direct the implementation of a strategic plan to guide the nationwide implementation of interoperable health information technology in both the public and private health care sectors." *Id.*

In 2009, Congress passed the Health Information Technology for Economic and Clinical Health Act ("HITECH Act"). *See* American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5, 123 Stat. 115 (2009). The Act codified the Office of the National Coordinator for Health Information Technology ("ONC"). 42 U.S.C. § 300jj-11(a). The ONC is headed by a National Coordinator, who is directed to "update the Federal Health IT Strategic Plan . . . to include specific objectives, milestones, and metrics" regarding "[t]he electronic exchange and use of health information and the enterprise integration of such information," as well as

"[s]trategies to enhance the use of health information technology in improving the quality of health care." *Id.* § 300jj-11(c)(3)(A).

In 2010, HHS adopted the Meaningful Use program.[1] *See* Medicare and Medicaid Programs; Electronic Health Record Incentive Program, 75 Fed. Reg. 44314-01 (Jul. 28, 2010). HHS stated that the program is aimed at using "[c]ertified [electronic health record] technology" "in a meaningful way" as "one piece of a broader [health-information technology] infrastructure needed to reform the health care system and improve health care quality, efficiency, and patient safety." *Id.* at 44321. To achieve that goal, payment incentives are provided to certain healthcare providers "who adopt and meaningfully use certified electronic health record (EHR) technology." 42 C.F.R. § 495.2(a).

Over the years, the federal government has incorporated the goals of the Meaningful Use program into a series of other initiatives, including the Merit-Based Incentive Payment System ("MIPS"), and the Primary Care First program. *See, e.g.*, 45 C.F.R. § 170.315(e)(3).

B.   **Procedural History**

On March 10, 2023, plaintiff filed a putative class action complaint in the Suffolk County Superior Court against Atrius. The complaint alleges a single count of intercepting wire communications in violation of Mass. Gen. Laws ch. 272, § 99. (Compl. ¶ 104-11).

On April 27, 2023, the case was removed to this court pursuant to the federal-officer removal statute, 28 U.S.C. § 1442(a)(1). On May 26, 2023, plaintiff moved to remand for lack of subject-matter jurisdiction.

---

[1] The Meaningful Use Program has since been renamed the Promoting Interoperability Program. However, as the parties use the Program's original name, the Court will do the same.

**II.     Legal Standards**

**A.     Motion to Remand**

A district court must remand a case to state court if "at any time before final judgment it appears that the district court lacks subject[-]matter jurisdiction." 28 U.S.C. § 1447(c). The removing party bears the burden of establishing federal jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

**B.     Removal Under § 1442(a)(1)**

The federal-officer removal statute provides that a civil action commenced in state court may be removed if it is against or directed to:

> The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1).

The removing party "bears the burden under § 1442(a)(1) to establish: (1) that it was acting under a federal officer's authority; (2) that the charged conduct was carried out for or relating to the asserted official authority; and (3) that it will assert a colorable federal defense to the suit." *Moore v. Electric Boat Corp.*, 25 F.4th 30, 34 (1st Cir. 2022) (internal citations and quotation marks omitted).

**III.    Analysis**

To succeed in its contention that removal is proper in this case, Atrius must show that it was "acting under a federal officer's authority." *Rhode Island v. Shell Oil Prods*, 979 F.3d 50, 59 (1st Cir. 2020), *summarily vacated on other grounds*, 141 S. Ct. 2666, 210 (2021). "'Acting under' connotes 'subjection, guidance, or control' and involves 'an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" *Id.* (quoting *Watson v. Philip Morris Cos.*,

4

551 U.S. 142, 152 (2007)). "A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official[,]' . . . even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Watson*, 551 U.S. at 153.

Here, Atrius contends that its alleged use of Google Analytics and Facebook's Meta Pixel tools are part of its effort to comply voluntarily with regulations that assist the government with its goal of enhancing patient engagement with EHR and supporting the creation of infrastructure to promote adoption of nationwide interoperable health-information technology. Without more, that is insufficient to support federal-officer removal, because even "a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone." *Id.*

While a contract or formal delegation might be sufficient to place defendant under a federal officer's authority, neither is alleged to be present here. *See id.* at 153-54; *Moore*, 25 F.4th at 34 n.3. Instead, Atrius relies on the direction and incentive payments it receives through the various federal programs as creating something "akin to a government-contractor relationship." (Notice ¶ 31).

That is also insufficient. The issue of federal-officer removal in cases involving healthcare providers such as Atrius that receive incentive payments for increasing patient access to EHRs is not one of first impression. An overwhelming majority of district courts, including in this district, have remanded similar data-privacy cases to state courts. *See, e.g.*, *Progin v. UMass Mem'l Health Care, Inc.*, 2023 WL 4535129, at *4 (D. Mass. July 13, 2023) ("[T]he fact that incentive payments will, in the future, shift to penalty payments if a provider fails to comply with the Meaningful Use Program further suggests that this is a regulation rather than a government contract."); *Quinto v. Regents of Univ. of California*, 2023 WL 1448050, at *2 (N.D. Cal. Feb. 1,

2023) ("[R]eceiving incentive payments for acting in a way that promotes a broad federal interest—in an area outside the traditional responsibility of the federal government—is not the same as being contracted to carry out, or assist with, a basic governmental duty."); *Doe v. BJC Health Sys.*, 2023 WL 369427, at *4 (E.D. Mo. Jan. 10, 2023); *Doe v. Cape Cod Healthcare, Inc.*, No. 23-cv-10080, slip op. at 10 (D. Mass. Jan. 25, 2023); *Crouch v. Saint Agnes Med. Ctr.*, 2023 WL 3007408, at *4 (E.D. Cal. Apr. 19, 2023); *Mohr v. Trustees of Univ. of Pennsylvania*, 2023 WL 3044594, at *5 (E.D. Pa. Apr. 20, 2023); *Browne v. Cedars-Sinai Health Sys.*, 2023 WL 3095551, at *3 (C.D. Cal. Apr. 26, 2023); *Beltran v. Cedars-Sinai Health Sys.*, 2023 WL 3620740, at *3 (C.D. Cal. May 24, 2023).

Defendant cites two district-court decisions that agree with its theory of federal-officer jurisdiction. (*See* Notice ¶ 12 (citing *Doe v. UPMC*, 2020 WL 4381675 (W.D. Pa. July 31, 2020); *Doe v. ProMedica Health Sys., Inc.*, 2020 WL 7705627 (N.D. Ohio Oct. 30, 2020))). However, these opinions are unpersuasive and inapposite given the precedent in this circuit. *See Moore*, 25 F.4th at 34; *Rhode Island*, 979 F.3d at 60.

Atrius's compliance in exchange for incentive payments under the Meaningful Use program, MIPS, or the Primary Care First program does not constitute "assist[ing]" the federal government in the "duties or tasks of the federal superior." Rather, Atrius is a private entity that voluntarily participates in federal incentive programs for its own financial gain. Activity of that sort does not fall within the ambit of the federal-officer removal statute. Accordingly, remand to Massachusetts state court is proper. Because that factor is dispositive, the Court need not consider whether Atrius's actions "relat[e] to the asserted official authority" or whether "it will assert a colorable federal defense to the suit."

6

### IV.     Conclusion

For the foregoing reasons, the Court finds that it lacks subject-matter jurisdiction over this matter, and the matter is not removable under 28 U.S.C. § 1442(a)(1).  Plaintiffs' motion to remand is therefore GRANTED.

**So Ordered.**

Dated:  October 25, 2023

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court